```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
MALIBU MEDIA, LLC,

           Plaintiff,                MEMORANDUM AND ORDER

    - against -                       12 Civ. 2954 (NRB)

JOHN DOES 1-5,

           Defendant.
--------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This action represents but one installment in the wave of suits flooding the federal court system involving the alleged downloading of pornographic films via the peer-to-peer file-sharing protocol known as BitTorrent. In these actions, courts have been required to grapple with complex technological concepts and yet apply these concepts to familiar doctrines of civil procedure. Specifically, courts have had to determine whether defendants who allegedly participated in sharing the same copy of a film over the BitTorrent protocol – but who did not necessarily share the file directly with one another - are properly joined as defendants pursuant to Federal Rule of Civil Procedure 20(a)(2).

Here, plaintiff Malibu Media, LLC brings suit against five individuals for allegedly downloading and uploading a copy of the film "Tiffany Sex with a Supermodel" (the "Film"). Presently

before the Court is the motion of John Doe No. 4 ("Doe 4") to sever and dismiss on the ground that defendants are improperly joined. For the reasons stated below, Doe 4's motion is denied.

## BACKGROUND[1]

### I. Overview of the BitTorrent Protocol

We begin by presenting a brief overview of the BitTorrent protocol. For purposes of this description, we rely heavily on the opinion of Magistrate Judge Mark A. Randon of the Eastern District of Michigan in Patrick Collins, Inc. v. Does 1-21, No. 11 Civ. 15232, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012), which in our view provides the most thorough judicial treatment to date of the technological issues relevant to the BitTorrent cases.

The file-sharing process begins when an "initial seeder" makes available a file representing a complete copy of the work to be distributed (e.g., the Film). The initial seeder shares the file through a "client program" that he has downloaded onto his computer and that is able to access the BitTorrent protocol. The file is broken into a number of "pieces," each of which is assigned a unique "hash identifier," meaning a randomly

---

[1] The background is derived from the complaint, filed April 13, 2012, and the Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference ("Fieser Decl."), filed April 25, 2012.

generated string of numbers and letters.[2] Id. at *2. A "Torrent file" is also created at this stage. The Torrent file contains information about the number and size of the pieces and the hash identifiers unique to each piece. Id. The Torrent file also contains the address of a tracker, which will serve to coordinate among all users who download the same Torrent file. See id. at *3-4.

When another user, or "peer," downloads the Torrent file, the tracker directs the peer's client program to the location of other BitTorrent users who have downloaded pieces of - or in the case of the initial seeder, simply possess - the desired file.[3] Id. at *3. Thus, the first person to download the Torrent file after it is created will download pieces only from the initial seeder. Id. at *2. After a peer's client program downloads a piece, it is stored locally on the peer's computer. Id. When the peer has downloaded all of the pieces of the desired file, the pieces will be reassembled into a complete copy of the original file and will be stored on the peer's computer for use. Id. at *3.

---

[2] Typically, the pieces are each one-quarter megabyte in size, although the final piece will be the size of the remainder of the file. Patrick Collins, 2012 WL 1190840, at *2.

[3] Unlike with older methods of peer-to-peer file-sharing such as Napster and LimeWire, BitTorrent does not require peers to use the same client program as each other or the initial seeder.

Notably, unless a peer has affirmatively inhibited his uploading capability, as soon as the peer downloads a piece, the piece automatically becomes available for upload to other users of the same Torrent file. Id. at *4. When a peer has downloaded all pieces of a file, the peer becomes a new "seeder" and will continue to make pieces of the file available for upload as long as his client program remains open and he does not take steps to prevent such uploading from occurring. See id. at *2. The group of peers that downloads and uploads pieces of a given file from each other, from seeders, and from the initial seeder is referred to as a "swarm." Id. at *3. The innovation of the BitTorrent protocol is that "[a]t any given moment, a peer may be simultaneously uploading [pieces to] and downloading pieces from . . . many different peers within the same swarm." Id. at *2. The ability of a peer to download pieces of a file simultaneously from any number of other members of his swarm increases the likelihood that he will be able to utilize the entirety of his downloading bandwidth while decreasing the uploading bandwidth that any given member of the swarm will be required to sacrifice. The protocol, in short, is highly efficient for its users.

The efficacy of BitTorrent is therefore dependent on users sharing the pieces of a file they have already downloaded. See id. at *4. To this end, BitTorrent has a built-in "tit-for-tat"

4

incentive system that punishes users – by means of a slower download speed – who inhibit or are otherwise restricted in their uploading capability. See Bram Cohen, <u>Incentives Build Robustness in BitTorrent</u>, at 3-4 (May 22, 2003), available at http://www.ittc.ku.edu/~niehaus/classes/750-s06/documents/BT-description.pdf. Notwithstanding this incentive system, most BitTorrent client programs do offer features that enable users to prevent or reduce the rate at which they upload files.

## II. Factual Background

Plaintiff is the owner of a registered copyright for the Film. (Compl. ¶ 11.) Using forensic software, plaintiff's investigator identified each of the John Doe defendants, by their IP address, as having participated in a particular swarm sharing the Film over BitTorrent. (Fieser Decl. ¶¶ 17-20.) Specifically, each John Doe defendant allegedly uploaded at least one piece of the Film – that is, one piece of a specific copy of the Film, identified by a hash identifier – to plaintiff's investigator on a date between November 23, 2011 and February 18, 2012. (<u>Id.</u> ¶¶ 18-20, Ex. B.) Plaintiff has traced the IP address of each John Doe defendant to a location within the jurisdiction of this Court. (<u>Id.</u>, Ex. B.)

Plaintiff filed the instant complaint on April 13, 2012. The same day the complaint was filed, plaintiff filed an ex parte motion seeking leave to file subpoenas on the internet

service providers ("ISPs") associated with the IP addresses of the John Doe defendants. On May 1, 2012, the Court granted plaintiff's motion, but subject to various protective conditions. (Docket no. 5.) One of these conditions was that a lock-up period was imposed during which the ISPs could not turn over defendants' information to plaintiff and defendants could present challenges to the subpoenas. (Id.)

Doe 4, appearing anonymously but through counsel, filed the instant motion on June 29, 2012. Doe 4 contends that the alleged participation of defendants in the same swarm is insufficient to justify their joinder pursuant to Federal Rule of Civil Procedure 20(a)(2). Doe 4 alternatively contends that, even if the formal criteria for joinder are satisfied, the Court should exercise its discretion and not permit the joinder of defendants given the nature of this action. Accordingly, Doe 4 requests that defendants be severed and the action be dismissed as to John Does Nos. 2-5.[4]

## DISCUSSION

### I. Legal Standard

Under Federal Rule of Civil Procedure 20(a)(2), parties may be joined as defendants in an action if: "(A) any right to relief is asserted against them jointly, severally, or in the

---

[4] Since the filing of Doe 4's motion, plaintiff has reached settlement agreements with John Doe No. 1 and John Doe No. 2. (Docket nos. 22, 23.) Nevertheless, the motion remains pertinent as to the joinder of the remaining defendants.

6

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

While a plaintiff bears the burden of establishing that that joinder of defendants is proper, "[i]n assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). Ultimately, federal courts should "entertain[] the broadest possible scope of [an] action consistent with fairness to the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Thus, "joinder of claims, parties and remedies is strongly encouraged." Id.

## II. Rule 20(a)(2) Requirements

District courts both within this jurisdiction and across the nation have profoundly split on whether joinder of defendants is warranted under the instant circumstances. See Next Phase Distribution, Inc. v. Does 1-27, No. 12 Civ. 3755 (VM), 2012 WL 3117182, at *3-4 (S.D.N.Y. July 21, 2012) (describing split and collecting cases). The central dispute among these courts has been whether the participation of defendants in the same swarm constitutes "the same transaction, occurrence, or series of transactions or occurrences" for

purposes of the joinder rule. Compare Digital Sin, Inc. v. Does 1-176 ("Digital Sin 176"), No. 12 Civ. 126 (AJN), 2012 WL 263491, at *5 (S.D.N.Y. Jan. 30, 2012) (finding that participation in the same swarm does satisfy this standard) with Digital Sins, Inc. v. Does 1-245 ("Digital Sins 245"), No. 11 Civ. 8170 (CM), 2012 WL 1744838, at *2 (S.D.N.Y. May 15, 2012) (reaching opposite conclusion).

We concur with those courts that have found the joinder criteria satisfied under these circumstances. We cannot agree with the assessment that defendants are "not related in any way except the method that was allegedly used to violate the law." See Digital Sins 245, 2012 WL 1744838, at *2. Such would be the case if defendants each shared the Film by virtue of a different swarm. Here, however, the pieces of the Film allegedly shared by defendants are all traceable back to the same original file made accessible by the same initial seeder. See Patrick Collins, 2012 WL 1190840, at *4-5. ("[I]n the universe of possible transactions, at some point, each Defendant downloaded a piece of the [work], which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant . . . ."). Moreover, because of the nature of the BitTorrent protocol, each defendant's participation in the swarm facilitated, even if only indirectly, the participation of the other defendants who

8

followed in time. Cf. Digital Sin, Inc. v. Does 1-27 ("Digital Sin 27"), No. 12 Civ. 3873 (JMF), 2012 WL 2036035, at *1 (S.D.N.Y. June 6, 2012) (noting that BitTorrent's benefit of "increased speed, efficiency, and reliability . . . is heightened as more and more users participate in a single 'swarm'").

In this regard, we note that each defendant is alleged not only to have downloaded a piece of the Film but also to have uploaded a piece of the Film to plaintiff's investigator. They did so despite the fact that most BitTorrent client programs permit users to restrict their uploading capability. Indeed, as previously discussed, the tit-for-tat incentive system built into BitTorrent is designed precisely to encourage peers to act in this type of collaborative manner.[5]

The length of time over which defendants are alleged to have participated in the swarm – eighty-eight days - does not undermine the interrelated nature of their actions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap . . . ." Patrick Collins, 2012 WL 1190840, at *8. As described above, the BitTorrent protocol operates such that every user is logically related to every other user who participates in the same swarm, regardless

---

[5] The derisive term "leecher" is employed to describe users who inhibit their uploading rates or who exit BitTorrent after having completed a download, thereby preventing the file from being uploaded to other peers. See Patrick Collins, 2012 WL 1190840, at *2.

9

of their time of participation. See id.; see also First Time Videos, LLC v. Does 1-95, No. 11 Civ. 3822 (MEJ), 2011 WL 4724882, at *6 (N.D. Cal. Oct. 7, 2011) (noting that "even after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm").

While the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time. Cf. Ginett v. Computer Task Grp., Inc., 962 F.2d 1085, 1094 (2d Cir. 1992) (noting that "[w]ith the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency, requiring greater use of the more liberal joinder procedures" (internal quotation marks omitted). Here, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same "series of transactions or occurrences." See Digital Sin 176, 2012 WL 263491, at *5. Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied.[6]

### III. Discretionary Considerations

Because joinder is permissive, a district court maintains the authority to not permit joinder even if the formal

---

[6] It is not in dispute that the claims against defendants present common questions of law or fact, thereby satisfying the second of the Rule 20(a)(2) criteria. See First Time Videos, 2011 WL 4724882, at *7.

requirements of Rule 20(a) are met. See SBO Pictures, Inc. v. Does 1-20, No. 12 Civ. 3925 (SAS), 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012). Doe 4 thus contends that, regardless of our determination with respect to the Rule 20(a)(2) requirements, we should exercise our discretion and not permit joinder in this case. At least several district courts in the BitTorrent line of cases have followed this approach. See, e.g., Next Phase Distribution, 2012 WL 3117182, at *4-5; SBO Pictures, 2012 WL 2304253, at *2; see also Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011). However, we decline to follow this path here.

The most common discretionary consideration invoked as a reason to prohibit joinder has been the potential for coercion. That is, there is a fear that regardless of a defendant's actual culpability, "he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film." Next Phase Distribution, 2012 WL 3117182, at *5. Stories that have emerged concerning coercive litigation tactics employed by plaintiffs in several cases have only heightened these fears. See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11 Civ. 3995 (DRH)(GRB), 12 Civ. 1147 (JS)(GRB), 12 Civ. 1150 (LDW)(GRB), 12 Civ. 1154 (ADS)(GRB), 2012 WL 1570765, at *5 (E.D.N.Y. May 1, 2012).

While we are certainly attuned to these concerns, we believe they are mitigated in this action for several reasons. First, none of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel. We are reluctant to prevent plaintiff from proceeding with its case based only on a "guilt-by-association" rationale. Third Degree Films v. Does 1-36, No. 11 Civ. 15200, 2012 WL 2522151, at *11 (E.D. Mich. May 29, 2012). Second, and more importantly, this Court and others have permitted defendants to litigate the BitTorrent cases anonymously upon a proper request to do so. The ability of a John Doe defendant to ensure that his name will not be publicly associated with the case removes much, if not all, of the leverage that a plaintiff would possess to unduly coerce him into settlement. Finally, although the vast majority of cases involving BitTorrent have thus far concerned pornographic films, we note that other cases have emerged regarding far more mundane subject matter. See, e.g., John Wiley & Sons, Inc. v. Does 1-35, No. 12 Civ. 3563, Docket no. 1 (S.D.N.Y. May 4, 2012) (alleging the unlawful distribution of various books in the "For Dummies®" series over BitTorrent). We find it important that our conclusion with respect to the propriety of joinder in a BitTorrent action not be susceptible to change based on the content of the underlying copyrighted work.

A second discretionary factor that courts have invoked when not permitting joinder is the possibility that defendants will raise individualized defenses. Namely, defendants may – as Doe 4 does here – assert that they are not the person who committed the unlawful downloading in question, and defendants may present personalized circumstances in support of their defense. See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *12 (noting that the moving defendants "raised a panoply of individual defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router"). However, we agree with those courts that have held that consideration of such defenses is premature at this stage of the proceedings. See, e.g., Digital Sin 27, 2012 WL 2036035, at *2. After plaintiff has effected service on defendants and defendants have responded with any relevant defenses, we are free to determine whether the claims against a particular defendant should be severed pursuant to Federal Rule of Civil Procedure 21 and/or dismissed. See id.

As a final matter, we are cognizant of the logistical difficulties that could be presented by a case involving numerous individual defendants, some of whom may proceed pro se. See Hard Drive Prods., 809 F. Supp. at 1164. While there would

13

be legitimate logistical problems associated with a case involving hundreds of individual defendants, cf. id., this case does not raise such concerns, as plaintiff has deliberately limited its action to only five defendants.

## CONCLUSION

For the reasons stated above, Doe 4's motion to sever and dismiss is denied.

**SO ORDERED.**

Dated:   New York, New York
         August 24, 2012

                                          /s/ Naomi Reice Buchwald
                                          NAOMI REICE BUCHWALD
                                          UNITED STATES DISTRICT JUDGE

14

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiffs:**
Jason Kotzker, Esq.
Kotzker Law Group
9609 S. University Blvd., #632134
Highlands Ranch, CO 80163

**Attorneys for Doe4:**
Ray Beckerman, Esq.
Morlan Ty Rogers, Esq.
Ray Beckerman, P.C.
108-18 Queens Blvd., 4th Floor
Forest Hills, NY 11375